## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Clear Wave Hearing Instruments, Inc., a Minnesota corporation, and Paul Schneider,<br><br>        Plaintiffs,<br><br>        v.<br><br>Starkey Holding Corporation, a Minnesota Corporation; Audibel, Inc., a Minnesota corporation; Micro Ear Technology, Inc., a Minnesota corporation, d/b/a Micro-Tech; Starkey Laboratories, Inc., a Minnesota corporation, d/b/a Audiosync Hearing Technologies; and William Austin,<br><br>        Defendants. | Case No:<br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiffs, Clear Wave Hearing Instruments, Inc. and Paul Schneider (hereafter "Plaintiffs"), for their Complaint against Defendants Starkey Holding Corporation, a Minnesota Corporation, Audibel, Inc., a Minnesota corporation, Micro Ear Technology, Inc., a Minnesota corporation d/b/a Micro-Tech, Starkey Laboratories, Inc., a Minnesota corporation d/b/a Audiosync Hearing Technologies, and William Austin (hereafter collectively, "Starkey Group"), state and allege as follows:

## THE PARTIES

**1.**      Plaintiff Clear Wave Hearing Instruments, Inc. (hereafter "Clear Wave") is a Minnesota corporation, having a principal place of business in Olmsted County, at 2700 N. Broadway, Rochester, MN  55906.  Clear Wave distributes, sells, and services hearing aids and equipment in Minnesota.  Clear Wave also has locations in the State of Minnesota in the Counties of Winona and Goodhue, and the Cities of Winona and Red Wing.  Clear Wave has also had locations until recently, in the Cities of Inver Grove Heights, Apple Valley, and Shakopee.

**2.**      Plaintiff Paul Schneider is President of Clear Wave, and his principal place of business is 2700 N. Broadway, Rochester, MN  55906, and he personally resides in Olmsted County, Rochester, Minnesota.

**3.**      Defendant Starkey Holding Corporation is a Minnesota Corporation having a principal place of business at 6700 Washington Ave. S, Eden Prairie, MN 55344.  Starkey Holding Corporation manufactures, distributes and sells hearing aids and equipment throughout the United States, including Minnesota.

**4.**      Defendant Audibel, Inc. is a Minnesota Corporation having a principal place of business at 6700 Washington Ave. S, Eden Prairie, MN 55344.  Audibel is a division of Starkey Laboratories, Inc.  Audibel manufactures, distributes and sells hearing aids and equipment throughout the United States, including Minnesota.

**5.**      Defendant Micro Ear Technology, Inc. d/b/a Micro-Tech is a Minnesota Corporation having a principal place of business at 6425 Flying Cloud Drive, Eden Prairie, MN 55344.  Micro-Tech manufactures, distributes and sells hearing aids and equipment throughout the United States, including Minnesota.

6.      Defendant Starkey Laboratories, Inc. d/b/a Audiosync Hearing Technologies is a Minnesota Corporation having a principal place of business at 6700 Washington Ave. S, Eden Prairie, MN 55344.  Audiosync manufactures, distributes and sells hearing aids and equipment throughout the United States, including Minnesota.

7.      Defendant William Austin is CEO of Micro Ear Technology, Inc. d/b/a Micro-Tech, a Minnesota Corporation, and Starkey Laboratories, Inc.  Upon information and belief, Austin is also a shareholder, board member, officer, or agent of the other Defendant entities. Austin is a resident of the County of Hennepin, State of Minnesota.

## JURISDICTION

8.      This Court has subject matter jurisdiction under U.S.C. §15 U.S.C. §1121, and supplemental jurisdiction of the state law claims under 28 U.S.C. §1367.

9.      This Court has personal jurisdiction over Starkey Group because they are registered in and maintain a principal place of business or residence within the District of Minnesota, transact business in this District, committed illegal or tortious acts in this District, and because a substantial part of the events described below were carried out in this District.

## BACKGROUND

10.     At all times relevant hereto, Plaintiffs have been in the business of fitting, selling, servicing, and dispensing hearing aids and accessories.

11.     Upon information and belief, the Defendant entities share common shareholders, officers, and directors, including but not limited to William Austin.

12.     Starkey Group implemented a strategy to support its marketing and distribution efforts with respect to its brand hearing aid products, by supporting hearing aid dispensers in certain areas where Starkey Group sought to expand and conduct business.  To that end, Starkey

Group entered into agreements with dispensers and audiologists throughout the United States, including Plaintiffs.

13.     Starkey Group induced Plaintiffs to distribute and dispense Starkey Group brand product.

14.     Starkey Group led Plaintiffs to believe, among other things, that Starkey Group brand product would generate income for Plaintiffs which would significantly exceed Plaintiffs' investments.

15.     A component of the marketing strategy promised by Starkey Group was the use of exclusive territories to guarantee market share.  That promise was made to Plaintiffs by officers of Starkey Group, namely David Dyer and Robert Madvig.

16.     As a result of the statements and inducements made by Starkey Group, Plaintiffs entered into an agreement (hereafter "2003 Loyalty Agreement") with Starkey Group on April 30, 2003, for the purchase and sale of Starkey Group brand hearing instruments, batteries, and related products and services.  Attached hereto and incorporated herein by reference as Exhibit A is a true and correct copy of the 2003 Loyalty Agreement.

17.     The 2003 Loyalty Agreement included the following provisions:

a.     The 2003 Loyalty Agreement provided for a five year base term (hereafter "Base Term").

b.     During the Base Term of the 2003 Loyalty Agreement, Plaintiffs were to purchase from Starkey Group, 100% of Plaintiffs' purchase requirements for hearing aid instruments and related products and services.

c.       Plaintiffs were required to purchase a minimum of one thousand two hundred (1,200) hearing instruments during the Base Term (hereafter "Minimum Purchase Requirements").

d.       As consideration for Plaintiffs' execution of the 2003 Loyalty Agreement, Starkey Group agreed to provide Plaintiffs with certain incentive payments, totaling Twenty Thousand Dollars ($20,000.00).

e.       Starkey Group represented that the incentive payment was an advance on a "loyalty fund" created for Plaintiffs.

f.       Starkey Group agreed, in the 2003 Loyalty Agreement, to contribute Two Hundred Dollars ($200) to a "loyalty fund" created for Plaintiffs, for each of the "Pinnacle" hearing aid units purchased by Plaintiffs for re-sale to an end user retail customer.

g.       The "loyalty fund" would not vest unless Plaintiffs were in full compliance with all terms of the 2003 Loyalty Agreement, and only (1) after the end of the five year base term during which the hearing aids were purchased; (2) after Dispenser has met the Minimum Purchase for the five year term in which the hearing aids were purchased.

18.     As additional consideration, Starkey Group gave Plaintiffs exclusive rights to dispense and distribute Starkey Group products within the following territories in Minnesota: Dodge County, Goodhue County, Wabasha County, Winona County, and Olmsted County, all as set forth in the License Agreement dated April 30, 2003 (hereafter 2003 License Agreement), a true and correct copy of which is attached hereto as Exhibit B.

19.     The 2003 Loyalty Agreement did not define "Pinnacle".

**20.**     Subsequent addendums to the 2003 License Agreement were issued in 2006 and 2007, which did not change the essential terms of the 2003 License Agreement, and only served to add Dakota County to Plaintiffs' exclusive territory.  (2006 and 2007 License Agreement Addendums are attached hereto as Exhibit C).

**21.**     Under the 2003 License Agreement, Starkey Group had the "option" to provide technical training, sales aids, advertising, and promotional support, product information, and display equipment, and the Plaintiffs (referenced as "dispenser" in the 2003 License Agreement) had the "option" to accept such support.

**22.**     Based upon the distribution rights provided by Starkey Group to Plaintiffs, and at the behest of Starkey Group, Plaintiffs made substantial commitments of time, effort, and capital required to develop and expand the market for Starkey Group brand products within their respective territories.

**23.**     In the Fall of 2005, Plaintiffs and another hear aid dispenser, Doug Freeman, entered into discussions about Plaintiffs' potential purchase of the Audiology and Better Hearing Care Business (a/k/a Freeman Office Purchase) in the Southern Minnesota region.

**24.**     Plaintiffs and Freeman discussed this plan with Starkey Group representatives, in particular Robert Madvig, Calvin Trepp, and William Austin.

**25.**     Starkey Group agreed to assist Plaintiffs in completing the Freeman Office Purchase through a revision of the 2003 Loyalty Agreement.

**26.**     In late October, early November 2005, Plaintiffs and William Austin negotiated the terms of a revised agreement (hereafter "2005 Verbal Agreement") for the 2003 Loyalty Agreement.  The Verbal Agreement included such items as $300.00 contributions to the Loyalty Agreement for all qualifying hearing aids, which were identified verbally, as well as immediate

**27.**     Starkey Group knew that the terms of the 2005 Verbal Agreement were essential terms for Plaintiffs, in order for Plaintiffs to be able to meet repayment requirements.

**28.**     In reliance upon the 2005 Verbal Agreement, Plaintiffs entered into an agreement to purchase the Freeman office.

**29.**     Starkey Group knew of the salient aspects of the Freeman office purchase requirements and timeline.

**30.**     On November 13, 2005, Starkey Group presented Plaintiffs with a written agreement intended to replace the 2003 Loyalty Agreement.  To Plaintiffs' surprise and dismay, the written agreement (hereafter "2005 Loyalty Agreement") did not contain previously negotiated terms of the 2005 Verbal Agreement.  Furthermore, Starkey Group refused to allow Plaintiffs to consult with an attorney for review of the presented 2005 Loyalty Agreement, and presented it on a "take it or leave it" basis.

**31.**     Plaintiffs, as anticipated by Starkey Group, had no choice but to accept the 2005 Loyalty Agreement, as written, in order to consummate the purchase of Freeman offices.

**32.**     The 2005 Loyalty Agreement was signed on November 13, 2005.  It included an expanded base term of 10 years (hereafter "Expanded Base Term"), and an increased minimum of 7,020 "Pinnacle" instruments (hereafter "Increased Minimum Purchase Requirements"). (Attached hereto as Exhibit D is a true and correct copy of the 2005 Loyalty Agreement).

**33.**     The 2005 Loyalty Agreement further provided that the purchase of "Pinnacle" instruments during the Expanded Base Term was "at the rate of 54 "Pinnacle" instruments".

**34.**     The term, "rate", as used in the 2005 Loyalty Agreement, was not defined within the 2005 Loyalty Agreement.

**35.**     The term, "Pinnacle", as used in the 2005 Loyalty Agreement, was not defined within the 2005 Loyalty Agreement.

**36.**     The terms of the 2005 Loyalty Agreement provided for a total of incentive payments of Eight Hundred Sixty Two Thousand Six Hundred Fifty Seven Dollars and Forty-Eight Cents ($862,657.48), some of which was required to be repaid, and some which was not required to be repaid.

**37.**     As additional incentive, Starkey Group agreed to contribute Three Hundred Dollars ($300.00) to Plaintiffs' Loyalty Fund for each Eclipse, Solara, Juno, Trilogy, Vision IxP, IsP, and HearStic EC3 hearing instruments (hereafter "Eclipse Product Line"), which was fewer than the number of units agreed to in the 2005 Verbal Agreement, purchased by Plaintiffs for re-sale to an end user from the date of the 2003 Loyalty Agreement and Two Hundred Dollars ($200.00) to Plaintiffs' Loyalty Fund for all other "Pinnacle" hearing instruments purchased by Dispenser for re-sale to an end user retail customer.

**38.**     By approximately June 1, 2006, Starkey Group unilaterally replaced the Eclipse Product Line with a superior, but equally priced, product line, known as the Virtue Product Line ("2006 Replacement Product Line").  The 2006 Replacement Product Line effectively rendered the Eclipse Product Line obsolete, because the 2006 Replacement Product Line used a completely new operating system.

**39.**     Starkey Group refused to extend the $300.00 incentive payment to all of the comparably priced 2006 Replacement Product Line hearing instruments.

40.     At the time that the $300.00 incentive on the Eclipse Product Line was being extended to Plaintiffs, Starkey Group knew that the Eclipse Product Line was going to be replaced and rendered obsolete by the roll-out of the 2006 Replacement Product Line, which it also knew was going to be rolled out within months.

41.     In approximately May 2009, the Anthem Product Line was rolled out.  It was essentially the same platform as the Virtue Product Line, with enhancements.  Starkey Group refused to extend the $300.00 incentive to ANY of the hearing instruments in the Anthem product Line.

42.     On September 15, 2007, the parties hereto amended the 2005 Loyalty Agreement (hereafter 2007 Amendment) to provide for inclusion of Plaintiff Paul Schneider and his family, for Health Insurance Benefits Coverage.  A true and correct copy of the 2007 Amendment is attached hereto as Exhibit E.

43.     The 2007 Amendment further increased the rate of purchase of "Pinnacle" hearing instruments to 68 per cycle (without a definition of "cycle"), and increased the Increased Minimum Purchase Requirement from 7,020 to 8,476 "Pinnacle" hearing instruments during the Expanded Base Term (without "Pinnacle" being defined).

44.     Based upon the distribution rights provided by Starkey Group to Plaintiffs, and at the behest of Starkey Group, Plaintiffs made substantial commitments of time, effort, and capital required to develop and expand the market for Starkey Group brand products within their respective territories.

45.     In furtherance of the relationship, Starkey Group has, and continues to, develop, prepare and sponsor marketing plans which Starkey Group imposes upon Plaintiffs.

46.     Plaintiffs have been, and continue to be coerced into participating in the marketing plans because Starkey Group "threatened" to extend the benefit of the plans to Plaintiffs' competitors if Plaintiffs did not "sign up".  The marketing plans included, but are not limited to, such referral plans as the "Invisible Hearing Aid Infomercial, "www.amphearing.com", "www.invisiblehearingaid.com", and www.Hearing-aid.com.

47.     The Invisible Hearing Aid Infomercial, www.amphearing.com, www.invisiblehearingaid.com, and www.Hearing-aid.com referral plans encompass all Starkey Group products in all territories, and permit all Starkey Group dispensers, regardless of brand, to be included in the marketing ventures.

48.     The Invisible Hearing Aid Infomercial, and www.invisiblehearingaid.com referral plans were presented to Plaintiffs in approximately May of 2010.

49.     The www.Hearing-aid.com referral plan was presented to Plaintiffs approximately in the Fall of 2010.

50.     The www.amphearing.com referral plan was presented to Plaintiffs in approximately January 2011.

51.     Plaintiffs, because of Starkey Group's coercion, have paid to participate in the Invisible Hearing Aid Infomercial, www.amphearing.com, www.invisiblehearingaid.com, and www.Hearing-aid.com referral plans.

52.     Plaintiffs have the exclusive right to distribute Starkey Group Products at retail locations within the territories identified in license agreements.

53.     The marketing plans developed, prepared, or sponsored by Starkey Group, such as The Invisible Hearing Aid Infomercial, www.amphearing.com, www.invisiblehearingaid.com, and www.Hearing-aid.com referral plans, constitute violations of the exclusive territory

requirements under the 2005 Loyalty Agreement, and the 2003 License Agreement and subsequent addendums.

54.     Through the first several years of their relationship, Plaintiffs and Starkey Group enjoyed mutually beneficial relationships.

55.     Plaintiffs developed their territories, and created demand for Starkey Group's products, enhancing the reputation and brand value of Starkey Group and its products, maintaining satisfied retail customers, resulting in the development of substantial value and goodwill, all without any material complaint from Starkey Group.

56.     Over the past several years, Starkey Group has failed to take action necessary to protect Plaintiffs' interest in its territories, pursuant to the agreement of the parties.  This has led to a deterioration of the relationship of the parties.

57.     Starkey Group has grown and developed additional brands of hearing instruments, which it has placed via United States Mail and/or internet marketing, or permitted to be placed, directly into competition with Plaintiffs in their exclusive territories.

58.     The additional brands developed by Starkey include, but are not limited to, Audiosync, Starkey, Nu-Ear, and Micro-Tech.

59.     These additional brands have been developed and marked by Starkey during the period 2005 to the present.

60.     The additional brands, being sold under marks such as Audiosync, Starkey, Nu-Ear, Micro-Tech, etc., are in all relevant respects identical in appearance, construction and performance, to the Starkey Group product being sold under contract by Plaintiffs.

**61.**     Starkey Group is selling the additional brands to dispensers marketing and dispensing in Plaintiffs' exclusive territories.  As a result, Plaintiffs have lost sales in their exclusive territories.

**62.**     Upon information and belief, Starkey Group has in the past, and continues to sell product to, and is related to, Hear In America, a buying group, which provides discount rates for educators in the United States.  Hear in America advertises throughout the United States, including Minnesota, and competes with Plaintiffs in their exclusive territories for sales and for pricing.  Yet, Starkey Group has failed to protect Plaintiffs from this sales activity.

**63.**     Because of these activities by Starkey Group, Plaintiffs have been unable to meet their purchasing requirements under the 2005 Loyalty Agreement and the 2007 Amendment.

**64.**     Starkey Group has also interfered with Plaintiffs' business by encouraging Plaintiffs to engage marketing and advertising development assistance from Starkey Group, and then transferring that assistance, namely Justin Ostrowski to competitors of Plaintiffs.

**65.**     Ostrowski was assigned by Starkey Group to work with Plaintiffs to develop marketing tools and plans in 2008.  He was subsequently re-assigned by Starkey Group to work with Plaintiffs' competitors after becoming familiar with Plaintiffs' business and Plaintiffs' current and future marketing plans and strategy.

**66.**     Furthermore, Starkey Group encouraged Plaintiffs to grow their business, including the purchase of Starkey Group dispensers in Shakopee and Burnsville, Minnesota in April 2008.  Starkey Group appeared to support Plaintiffs business activities, by granting Plaintiffs additional exclusive territory, namely, Dakota County.  However, Starkey Group subsequently sold competitive product to other hearing aid dispensers located in Plaintiffs'

exclusive territories, such as Pin Drop Hearing, thereby interfering with and undercutting Plaintiffs' business opportunities.

67.     Pin Drop Hearing established retail locations and began selling and dispensing hearing aid products in Plaintiffs' exclusive markets beginning in approximately June 2009.

68.     Pin Drop Hearing has retail locations in exclusive territories owned by Plaintiffs.

69.     Pin Drop Hearing has in the past, and upon information and belief continues to sell hearing instruments under the Starkey Group brand name, "Audiosync".

70.     Plaintiffs sell hearing instruments under the Starkey Group brand name, "Audibel".

71.     The Starkey Group product line, Audiosync, is in all relevant respects identical in appearance, construction and performance, to the Starkey Group product line, Audibel, being sold by Plaintiffs.

72.     The hearing instruments sold under the brand name, "Audibel", are visually and functionally identical, to the Starkey Group hearing instruments sold under the brand names Starkey, Nu-Ear, Audiosync, and Micro-Tech.

73.     Certain marketing materials have been produced for or by Starkey group for its Starkey Group brand products.

74.     Starkey Group has caused these marketing materials to be placed in commerce.

75.     Certain of the marketing materials related to the Starkey Group brand products were copied from one another with trivial modifications, for hearing instruments sold under different Starkey Group brands, such as Audibel, Starkey, Nu-Ear, Audiosync and Micro-Tech. True and correct copies of exemplar advertising materials are attached hereto as Exhibit F.

76.    Defendant William Austin is a shareholder, owner, or officer of the Starkey

Group entities, and upon information and belief, all of the conduct described herein by Starkey

Group was directed with the knowledge, approval, and aid of William Austin.

77.    As a direct result of the activities of Starkey Group, Plaintiffs were forced to sell

their business locations in Inver Grove Heights, Apple Valley, and Shakopee, thus incurring

further economic loss.

## COUNT 1
### (Breach of Contract)

78.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth in

all of the paragraphs above, as is fully set forth.

79.    Pursuant to the express and implied terms of the various agreements between the

parties, and the parties' course and dealing and performance throughout the tenure of their

relationship during which Plaintiffs have sold and dispensed Starkey Group's brand products,

Plaintiffs were given the right to sell Starkey Group's brand products within and throughout their

exclusive territories.

80.    By its conduct, including but not limited to the following, Starkey Group

breached its contractual duties and obligations to Plaintiffs:

(a)    By failing to provide Plaintiffs with "exclusive territories"; and

(b)    By interfering with and misappropriating Plaintiffs' customer base which

Plaintiffs developed as a result of Starkey Group's promises of exclusive territory;

(c)    By failing to create and monitor a "loyalty fund" in accordance with the

terms of the agreement between the parties.

**81.**     As a direct result of Starkey Group's breach of its contractual duties and obligations, Plaintiffs have been, and will be, injured in their business in a number of ways, including but not limited to, the following:

(a)     Plaintiffs have been, and will be, denied a legitimate expectancy arising from their agreement with Starkey Group;

(b)     In reliance upon the continuation of their distribution relationships with Starkey Group, Plaintiffs have expended and invested money, time, skill and effort to market, sell, and service their customer base, all of which will be lost if Plaintiffs' distribution rights are not enforced;

(c)     Plaintiffs have lost and will continue to lose profits from the distribution of Starkey Group brand products within their respective exclusive territories;

(d)     Plaintiffs have suffered and will continue to suffer irreparable damage to their respective reputations as well as damage to Plaintiffs' contractual and business relationships with their respective customers;

(e)     Plaintiffs have suffered damages in the nature of lost business opportunities and lost profits as a result of Starkey Group's failure to provide and enforce the rights given to Plaintiffs under their exclusive territories via the License Agreements in place;

(f)     Starkey Group has been and will continue to be unjustly enriched at Plaintiffs' expense in that Starkey Group will unfairly reap the benefit of Plaintiffs' marketing and promotional efforts with Plaintiffs' existing customer base.

**82.**      As a direct and proximate result of Starkey Group's breach of contract, Plaintiffs have been and will continue to be damaged in an amount which cannot now be exactly determined, but which is in excess of $500,000.00.

### COUNT 2
### (Violation of Minnesota Franchise Act, Minn. Stat. §80C, et seq.)

**83.**      Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

**84.**      The commercial relationship between Plaintiffs and Starkey Group, as defined by the express and implied terms of the agreements between the parties as well as the parties' course of dealings and performance during which Plaintiffs have distributed Starkey Group's brand products, constitutes a "franchise" pursuant to the terms of Minn. Stat. §80C.01, et seq.

**85.**      Starkey Group is a franchisor, and Plaintiffs are franchisees pursuant to the terms of Minn. Stat. §80C.01, et seq.

**86.**      The acts of Starkey Group as outlined above constitute "unfair practices" in violation of Minn. Stat. §80C.01, et seq.

**87.**      Upon information and belief, all of the conduct as outlined above was directed with the knowledge, approval, and aid of Defendant William Austin.

**88.**      As a direct and proximate result of Starkey Group's conduct, Plaintiffs have been and will continue to be damaged in an amount which cannot now be exactly determined, but which is in excess of $500,000.00.

### COUNT 3
### (Unjust Enrichment/Recoupment)

**89.**      Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

90.     Starkey Group's conduct in encouraging and allowing Plaintiffs to serve as Starkey Group's brand distributors and build up the business of selling Starkey Group's brand products and making substantial investments of time and money at Starkey Group's behest in reliance upon a continuing distributorship, and then breaching the agreements between the parties and unfairly interfering with Plaintiffs' business without good cause in a retaliatory, arbitrary, unreasonable fashion constitutes unjust enrichment.

91.     Starkey Group will be unjustly enriched at Plaintiff's expense in that Starkey Group will harvest the market penetration, promotion and development of Plaintiffs' customers, which Plaintiffs diligently pursued during the last several years as an exemplary distributor of Starkey Group's brand products.

92.     The amount by which Starkey Group has been or will be unjustly enriched and the amount which Plaintiffs are or will be entitled to recover cannot now be exactly determined, but is believed to be in excess of $500,000.00.

## COUNT 4
### (Tortious Interference with Existing and Prospective Contractual Relationships)

93.     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

94.     In reliance upon Starkey Group's agreements and course of conduct and the covenants contained in or reasonably implied by such agreements and course of conduct, Plaintiffs invested money, time, resources, skill and expertise in developing stable, harmonious and productive relationships with customers and prospective customers for the sale of Starkey Group brand products.

95.     Starkey Group's conduct was undertaken with the express intention of interfering with Plaintiffs' sales of Starkey Group brand products to Plaintiffs' customers and prospective customers.

96.     Starkey Group's conduct has interfered with and will continue to interfere with existing and prospective contractual business relationships of Plaintiffs.

97.     As a direct and proximate result of Starkey Group's tortuous interference with Plaintiffs' existing and prospective contractual relationships, Plaintiffs have suffered, and will continue to suffer, damage to their respective businesses including, but not limited to, loss of profits and goodwill and business reputation affecting their other lines.

98.     As a direct and proximate result of Starkey Group's conduct, Plaintiffs have incurred, and will continue to incur, damages in their businesses in an amount which cannot now be exactly determined, but which is believed to be in excess of $500,000.00.

## COUNT 5
### (Estoppel)

99.     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

100.    Throughout the course of Plaintiffs' dealings with Starkey Group, Starkey Group made numerous express and implied promises and representations to Plaintiffs.  These promises and representations included, without limitation, promises and representations that Plaintiffs would have continuing rights to distribute Starkey Group brand products, that Plaintiffs' exclusive territory would be protected and enforced, and that Plaintiffs' distribution rights would not be arbitrarily or capriciously terminated.

101.    Starkey Group knew or should have known that these promises and representations would induce action or forbearance on behalf of Plaintiffs.

**102.**     Starkey Group's, promises and representations did, in fact, induce action and/or forbearance to Plaintiffs' detriment insofar as Plaintiffs entered into and maintained their distribution relationship with Starkey Group, developing and maintaining a market for Starkey Group brand products.  Plaintiffs made a substantial commitment of time, effort and capital in the penetration and development of a market for Starkey Group brand products.  In further reliance upon Starkey Group's promises and representation, Plaintiffs refrained from entering into relationships with alternative manufacturers to distribute competitive product lines. Plaintiffs' reliance upon, and resulting action and/or forbearance, was reasonable under the circumstances.

**103.**     Plaintiffs are entitled to recover damages from Starkey Group in an amount which cannot now be exactly determined but will be proven at trial, based upon the principals of equitable and/or promissory estoppel.

## COUNT 6
### (Breach of Implied Covenant of Good Faith and Fair Dealings)

**104.**     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

**105.**     In reliance upon Starkey Group's agreements and course of conduct with Plaintiffs, and the covenants contained in or reasonably implied by the agreements and course of conduct, Plaintiffs fully and successfully performed all parts of their agreements with Starkey Group at all times and invested money, time, resources, skill and expertise in developing the market for Starkey Group's brand products within Plaintiffs' respective exclusive territories, and in hiring and training employees to develop, service and market Starkey Group's brand products within Plaintiffs' respective exclusive territories.

**106.**     By reason of the conduct described above, Starkey Group breached, without excuse or justification, its implied covenant of good faith and fair dealing in the performance of the agreement and understandings with Plaintiffs.

**107.**     Starkey Group's conduct, described above, constitutes bad faith destruction by Starkey Group of Plaintiffs' legitimate expectations derived from bargained-for exchanges during the tenure of the business relationships.

**108.**     As a direct and proximate result of Starkey Group's breach of the implied covenants of good faith and fair dealing in the performance of its contractual agreements, Plaintiffs have incurred, and will continued to incur, damages in an amount which cannot now be exactly determined, but which is believed to be in excess of $500,000.00.

**COUNT 7**
**(Violation of Minnesota Deceptive Trade**
**Practices Act – Minn. Stat. §325D.44)**

**109.**     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

**110.**     Starkey Group marketed identical goods under different names.

**111.**     The marketing of these goods caused likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of the goods.

**112.**     The marketing of these goods caused likelihood of confusion or misunderstanding as to the affiliation, connection, or association with, or certification by, others.

**113.**     In marketing these goods, Starkey represented that these goods had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or a connection that does not exist.

**114.**     The acts of Starkey Group constitute deceptive trade practices, within the meaning of Minn. Stat. §325D.44.

**115.**     Plaintiffs are persons likely to be damaged by a deceptive trade practice of another, as is used in Minn. Stat. §325D.45.

**116.**     These wrongful acts have been willful, and have caused and will continue to cause Plaintiffs substantial damage and injury, including loss of customers, damage to its goodwill, confusion of existing and potential customers, injury to its reputation, in an amount to be determined.

**117.**     The harm these wrongful acts will cause to Plaintiffs is both imminent and irreparable, and the amount of damage sustained by Plaintiffs will be difficult to ascertain if these acts continue.

**118.**     Plaintiffs are suffering irreparable harm to its reputation and goodwill in the hearing aid industry due to Starkey Group's unfair competition.

## COUNT 8
### (Fraud And Misrepresentation)

**119.**     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

**120.**     Starkey Group made fraudulent statements to Plaintiff to induce Plaintiff to enter into agreements with Starkey Group to market, sell, dispense, and service Starkey Group' products.

**121.**     Starkey Group's fraudulent statements include, but are not limited to, the following:

      a.     That Plaintiff would have exclusive rights in territories contracted for under the Loyalty Agreement and License Agreements;

b.      That Starkey Group would create and maintain Plaintiff's Loyalty Fund under the terms and provisions of the Loyalty Agreement;

c.      That Starkey Group would contribute certain dollar amounts to Plaintiff's Loyalty Fund;

d.      That the 2005 Verbal Agreement would be reduced to writing, and would include the terms negotiated;

e.      That Plaintiffs would not be required to participate in marketing and/or sales promotions by Starkey Group;

122.    That Starkey Group knew that their statements were false.

123.    That Starkey Group intended that Plaintiff rely on the statements.

124.    That Plaintiffs relied on the fraudulent statements and misrepresentations.

125.    That Plaintiffs have sustained damages as a result of the fraudulent statements and misrepresentations in an amount as of yet undetermined, but believed to be in excess of $500,000.00.

## COUNT 9
### (Declaratory Judgment)

126.    Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

127.    That the jurisdiction is proper under Minn. Stat. Ch. 555 because a controversy exists over the rights, status, and legal remedies of the parties under the 2005 Loyalty Agreement and the 2003 License Agreement.

128.    That venue is proper because Starkey Group' principal place is business or residence is located in the District of Minnesota.  Minnesota.

**129.** That Minn. Stat. Ch. 555 also provides for a discretionary award of attorney's fees and costs.

**130.** That Plaintiff seeks an order of this Court construing the terms and conditions of the 2005 Loyalty Agreement and 2003 License Agreement and Amendments.

**131.** That Plaintiff requests that the Court issue a finding that Starkey Group have violated the terms of the 2005 Loyalty Agreement and 2003 License Agreement and Amendments.

**COUNT 10**
**(Constructive Trust)**

**132.** Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

**133.** In order to make certain those monies that were to be contributed to Plaintiffs' Loyalty Fund based on Plaintiffs' sales of hearing aid instruments, Plaintiffs are entitled to the establishment of a constructive trust against any and all monies and other real and personal assets of Starkey Group in an amount equal to no less than $804,600.00 (4,023 [total units sold by Plaintiffs] x $200.00 per unit). This is especially necessary because of the interrelatedness of Starkey Group, and Starkey Group's inability to provide Plaintiffs with an audited valuation of account status, or identification of a separately instituted account relating to Plaintiffs' loyalty fund.

**134.** Based on the foregoing, Plaintiffs request that the Court establish a constructive trust against Starkey Group' assets in an amount of no less than $804,600.00, which represents Plaintiffs' calculations of the number of hearing aid instruments sold, and therefore the contributions due to Plaintiffs' Loyalty Fund under the Contract.

**COUNT 11**
**(Unfair Competition under the Lanham Act)**

**135.**     Plaintiffs re-allege and incorporate by reference each of the allegations set forth in all of the paragraphs above, as is fully set forth.

**136.**     Starkey Group caused to be placed in commerce, advertisements which were copied from one another with trivial modifications, for hearing instruments sold under different Starkey Group brands.

**137.**     The advertisements contain false or misleading representation of fact which are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the dispensers of Starkey Group brand hearing instruments sold under different brands.

**138.**     Plaintiffs have suffered injury as a result of Starkey Group's violation of Section 43 of the Lanham Act.

**139.**     Starkey Group committed these acts willfully.

**140.**     Plaintiffs are entitled to injunctive relief, prohibiting Starkey Group's activities in Plaintiffs' exclusive territory using other Starkey Group brand products, together with its costs, disbursements and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

A.     Judgment against Defendants in favor of Plaintiffs for all relief permitted by law, including applicable damages, the costs of this suit, pre- and post-judgment interest, and reasonable attorneys' fees.

B.     A decree that the Starkey Group has breached the 2005 Loyalty Agreement;

C.     A decree that the Starkey Group has breached the 2003 License Agreement and Amendments;

D.     A decree that the Starkey Group is a Franchisor;

E.     A decree that Plaintiffs are Franchisees;

F.     A decree that the Starkey Group has engaged in unfair practices in violation of Minn. Stat. §80C.01, et seq.;

G.     A decree that the Starkey Group has been unjustly enriched;

H.     A decree that the Starkey Group has tortiously interfered with Plaintiffs' existing and prospective contractual relationships;

I.     A decree that the Starkey Group has breached an implied covenant of good faith and fair dealing with the Plaintiffs;

J.     A decree that the Starkey Group has violated the Minnesota Deceptive Trade Practices Act;

K.     A decree that the Starkey Group has engaged in fraud and misrepresentations;

L.     A decree that the Starkey Group has engaged in willful unfair competition under the Lanham Act;

M.     A decree permanently enjoining Defendants, their agents, servants, employees, successors, assigns, and all persons in active concert or participation with any of them from distributing, selling, marketing Starkey Group hearing instrument products in Plaintiffs' exclusive territories.

N.     A decree requiring corrective advertisement by Defendants.

O.     Awarding Plaintiffs their full amount of actual damages;

P.      Awarding Plaintiffs treble damages under 15 U.S.C. §1117, and as otherwise allowed by law;

Q.      A decree that the Defendants are jointly and severally liable.

R.      Awarding Plaintiffs their costs and attorneys' fees under 15 U.S.C. §1117; Minn. Stat. Ch. 80C; and Minn. Stat. §325D.45;

S.      Awarding Plaintiffs, Defendants' profits under 15 U.S.C. §1117; and

T.      Awarding Plaintiffs such additional and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

SHERRILL LAW OFFICES, PLLC

Dated: _June 14, 2011_      By: _____

Kathryn K. Smith, #260812
4756 Banning Avenue, Suite 212
White Bear Lake, MN 55110
TEL: (651) 426-2400
FAX: (651) 426-2322

Attorney for Plaintiffs