## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Clear Wave Hearing Instruments, Inc.,                  Civil No. 11-1562 (DWF/SER)
a Minnesota corporation; and Paul
Schneider,

                    Plaintiffs,

v.                                                                    **MEMORANDUM
                                                              OPINION AND ORDER**

Starkey Holding Corporation, a
Minnesota corporation; Audibel, Inc.,
a Minnesota corporation; Micro Ear
Technology, Inc., a Minnesota corporation
d/b/a Micro-Tech; Starkey Laboratories, Inc.,
a Minnesota corporation, d/b/a Audiosync
Hearing Technologies; and William Austin,

                    Defendants.

---

Kathryn K. Smith, Esq., Sherrill Law Offices, PLLC, counsel for Plaintiffs.

Alana K. Bassin, Esq., Richard G. Morgan, Esq., Bowman & Brooke LLP; and Karla M.
Vehrs, Esq., Lindquist & Vennum PLLP, counsel or Defendants.

---

## INTRODUCTION

This matter is before the Court on a Motion to Dismiss (Doc. No. 2) brought by

Starkey Holding Corporation, Audibel, Inc., Micro Ear Technology, Inc. d/b/a

Micro-Tech ("Micro-Tech"), Starkey Laboratories, Inc. d/b/a Audiosync Hearing

Technologies, and William Austin (collectively, "Defendants").  For the reasons set forth

below, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

Plaintiffs Clear Wave Hearing Instruments, Inc. ("Clear Wave") and Paul

Schneider are in the business of selling and servicing hearing aids and accessories.  (Doc.

No. 1, Compl. ¶¶ 1, 2, 10.)  Paul Schneider is the President of Clear Wave.  (*Id.* ¶ 2.)

Audibel[1] is a division of Starkey Laboratories, Inc., both of which are in the business of

manufacturing and selling hearing aids.  (Doc. No. 1, Compl. ¶¶ 4 & 6.)  Starkey

Laboratories, Inc., also has other divisions and subsidiaries that sell hearing aids to

distributors under different brand names.  Audibel's dispensers (the individuals and

companies that distribute Audibel's products) are granted exclusive territorial rights for

the sale of their respective products.  (*See id.* ¶¶ 12, 18, Ex. B ¶ 1.)  Defendant Micro-

Tech manufactures and sells hearing aids and equipment.  (*Id.* ¶ 5.)  Defendant William

Austin is Chief Executive Officer of Micro-Tech and Starkey Laboratories, Inc.  (*Id.* ¶ 7.)

On April 30, 2003, Plaintiffs entered into a loyalty agreement with Audibel

pursuant to which Plaintiffs agreed to purchase products from Audibel to resell to

---

[1]      According to Defendants, Audibel, Inc., who is a named defendant in this action, does not sell or manufacture hearing aids and is not a party to any contract with Plaintiffs. Instead, Plaintiffs entered into the relevant contracts with "Audibel, a division of Starkey Laboratories, Inc." (*See, e.g.*, Compl. ¶ 16, Ex. A at 1.)  Defendants represent that this "Audibel" is a registered name under which Starkey Laboratories, Inc., does business (Doc. No. 6 at 2 n.1).  Defendants do not appear to contest that Starkey Laboratories, Inc., is a properly named defendant in this action.  Indeed, Defendants refer to Audibel, Inc., Starkey Holding Corporation, Micro-Tech, and William Austin as the "non-Audibel Defendants," thus leaving Starkey Laboratories, Inc., as the "Audibel" defendant.  (Doc. No. 6 at 9.)  For clarity, the Court refers to "Audibel, a division of Starkey Laboratories, Inc." as "Audibel, a division of Starkey Laboratories, Inc." or, simply, "Audibel."  The Court refers to all other defendants as the "non-Audibel Defendants."

Plaintiffs' customers.  (Compl. ¶ 16, Ex. A (the "2003 Loyalty Agreement"). ) Under the 2003 Loyalty Agreement, the parties agreed to a "base term" of five (5) years, during which Plaintiffs agreed to purchase "from Audibel 100% of [Plaintiffs'] purchase requirements for hearing aids and related products and services."  (*Id*. ¶ 1.)  Plaintiffs also agreed to purchase twenty (20) hearing aids per month until a total of 1,200 hearing aids were purchased during the base term.  (*Id*.)  In return, Audibel agreed to provide Plaintiffs with equipment and funding and agreed to create a "Loyalty Fund" for Plaintiffs.  (*Id*. ¶¶ 3-4.)  Specifically, Audibel agreed to contribute $200 into the Loyalty Fund for "each of the Pinnacle hearing aids purchased by" Plaintiffs during the term of the parties' agreement.  (*Id*. ¶ 4.)  Once the Loyalty Fund vested, the contributions made would be paid to Plaintiffs minus "any amounts advanced."  (*Id*. ¶ 5.)

Also on April 30, 2003, Audibel and Plaintiffs entered into a License Agreement. (Compl. ¶ 18, Ex. B ("2003 License Agreement").)  Under the 2003 License Agreement, Audibel granted Plaintiffs "the exclusive right to distribute Audibel Products at retail locations solely within the area described by the attachment hereto (Territory)."  (*Id*. ¶ 1.) The 2003 License Agreement also provides that, "[w]hile this Agreement and the Loyalty Agreement are in effect, Audibel will not appoint another person as an authorized retail dispenser for Audibel Products at any location within the Territory."  (*Id*.)  Plaintiffs' exclusive Territory comprised several counties in Minnesota, including  Dodge,

Goodhue, Wabasha, Winona, and Olmstead.[2]  (Doc. No. 1-2 at 3 ("Attachment

Territory").)  The 2003 License Agreement further provides that Audibel "has not and

shall not charge [Plaintiffs], directly or indirectly any fee, charge or consideration of any

kind for the right to enter into or maintain [Plaintiffs'] relationship with Audibel" and that

"[t]he only payments [Plaintiffs] will be required to make to Audibel are for the bona fide

wholesale price of reasonable amounts of inventory for resale and repayment of loyalty

payments from Audibel for the breach of [Plaintiffs] as determined in the Loyalty

Agreement."  (*Id*. ¶ 3.)

In 2005, Plaintiffs and another hearing aid dispenser, Doug Freeman, began

discussing Plaintiffs' potential purchase of the Audiology and Better Hearing Care

Business ("Freeman Office Purchase") in Southern Minnesota.  (Compl. ¶ 23.)  Plaintiffs

and Freeman discussed the plan with Defendants' representatives—Robert Madvig,

Calvin Trepp, and William Austin.  (*Id*. ¶ 24.)  Plaintiffs allege that Defendants agreed to

assist Plaintiffs in completing the Freeman Office Purchase by revising the 2003 Loyalty

Agreement.  (*Id*. ¶ 25.)  In particular, Plaintiffs allege that, in late October or early

November 2005, Plaintiffs verbally negotiated revisions to the 2003 Loyalty Agreement

(the "2005 Verbal Agreement").  (*Id*. ¶ 26.)  Pursuant to the alleged 2005 Verbal

Agreement, Plaintiffs assert that William Austin, as an alleged representative of

Defendants, agreed to increase the Loyalty Fund contribution to $300 for all qualifying

hearing aids, which were identified verbally.  (*Id*. ¶ 26.)  In reliance on the alleged 2005

---

[2]      Additional territory was added in 2006 and 2007.  (Compl. ¶ 20 & Ex. C.)

Verbal Agreement, Plaintiffs agreed to enter into the Freeman Office Purchase.  (*Id.*

¶ 28.)

On November 13, 2005, Plaintiffs and Audibel executed a 2005 Loyalty

Agreement.  (Compl. ¶ 30, Ex. D.)  Plaintiffs allege that Defendants presented Plaintiffs

with the proposed 2005 Loyalty Agreement and that Plaintiffs were dismayed that it did

not contain the terms of the 2005 Verbal Agreement.  (*Id.* ¶ 30.)  Plaintiffs further allege

that Defendants did not allow Plaintiffs to consult with an attorney and presented the

agreement on a "take it or leave it" basis.  (*Id.*)  Plaintiffs submit that they had no choice

but to accept the terms of the 2005 Loyalty Agreement as written in order to consummate

the Freeman Office Purchase.  (*Id.* ¶ 31.)

The 2005 Loyalty Agreement included a base term of ten (10) years and increased

the minimum number of "Pinnacle" instruments to be purchased by Plaintiffs during the

base term to 7,020.  (*Id.* ¶ 30, Ex. D. at ¶¶ 1, 2.)  Under the 2005 Loyalty Agreement,

Plaintiffs agreed to purchase "from Audibel 100% of [Plaintiffs'] total purchase

requirements for hearing aid instruments, batteries and related products and services."

(*Id.* ¶ 2.)  In exchange, Audibel agreed to provide Plaintiffs with equipment and funding,

and to deliver $755,300 for the Freeman Office Purchase.  (*Id.* ¶¶ 3.A-3.B.)  Audibel also

agreed to make certain specific contributions to Plaintiffs' Loyalty Fund for the sale of

Pinnacle units and other hearing instruments including Eclipse, Solara, June, Trilogy,

Vision IxP, IsP and HearStic EC3.  (*Id.* ¶ 4.)  Plaintiffs refer to the additional instruments

as the "Eclipse Product Line." (Compl. ¶ 37.)  The 2005 Loyalty Agreement also

contained the following merger clause:  "This Agreement contains the entire agreement

of the parties hereto and supersedes all prior or contemporaneous agreements and understandings, oral or written, between the parties hereto with respect to the subject matter hereof." (*Id*. ¶ 30, Ex. D. at ¶ 16.)

Also on November 13, 2005, Plaintiffs, Doug Freeman, and Audibel executed an "Asset Purchase Agreement." (Doc. No. 7, Madvig Aff. ¶ 3, Ex. 1 ("Asset Purchase Agreement").)[3] Under the Asset Purchase Agreement, Audibel agreed to act as "Financier" for Plaintiffs' purchase of the Freeman business. (*Id*.) The Asset Purchase Agreement also provided that the total purchase price for the Freeman Office Purchase would "be paid to Seller [Doug Freeman] by Financier [Audibel] as mutually agreed upon." (*Id*. at ¶ 4.) The Asset Purchase Agreement also contained the following merger clause: "This Agreement contains the entire agreement among and between the parties concerning the subject matter hereof. This Agreement supersedes any and all prior agreements, whether written or oral, between the parties relating hereto concerning the sale of the [Freeman] Business." (*Id*. at ¶ 7.)

Plaintiffs assert that by June 2006, Defendants replaced the Eclipse Product Line with a different product line that rendered the Eclipse Product Line obsolete. (Compl. ¶ 38.) Plaintiffs allege that Defendants refused to extend the $300 incentive payment to

---

[3]     The Court properly considers these materials because they are necessarily embraced by the pleadings. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). *See also* 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1357.

the replacement product line.  (*Id.* ¶ 39.)  In addition, Plaintiffs allege: that Defendants

made the promise of the $300 contribution on the Eclipse Product Line with the

knowledge that the product line was going to be replaced and rendered obsolete by the

2006 roll-out of a replacement product line; that Defendants failed to create, maintain,

and make payments into Plaintiffs' Loyalty Fund; and that Defendants imposed

marketing plans upon Plaintiffs and threatened to extend the benefit of such plans to

Plaintiffs' competitors if Plaintiffs did not sign up.  (*Id.* ¶¶ 33-41, 45, 80, 121, 133, 134.)

Further, Plaintiffs allege that, since 2005, Defendants have developed additional brands

of hearing instruments, including but not limited to Audiosync, Starkey, Nu-Ear, and

Micro-Tech, which have been placed, or permitted to be placed, directly into competition

with Plaintiffs in Plaintiffs' exclusive Territory.  (*Id.* ¶¶ 56-59.)  Plaintiffs maintain that

these additional brands are in all relevant respects identical in appearance, construction,

and performance to the products being sold by Plaintiffs under its various agreements

with Audibel.

On June 14, 2011, Plaintiffs initiated the present action by filing a Complaint, in

which Plaintiffs assert eleven causes of action:  (1) breach of contract; (2) violation of

Minnesota Franchise Act, Minn. Stat. § 80C, *et seq.*; (3) unjust enrichment/recoupment;

(4) tortious interference with existing and prospective contractual relationships;

(5) estoppel; (6) breach of implied covenant of good faith and fair dealing; (7) violation

of Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.44; (8) fraud and

misrepresentation; (9) declaratory judgment; (10) constructive trust; and (11) unfair

competition under the Lanham Act.  Defendants now move to dismiss all of Plaintiffs'

claims.

## DISCUSSION

### I.    Legal Standard

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all

facts in the complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th

Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory

allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir.

1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City

of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint,

matters of public record, orders, materials embraced by the complaint, and exhibits

attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous

Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

545 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level."  *Id*. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,"

will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)

(citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise

a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II.   Breach of Contract & Declaratory Judgment Claims

In Count One of their Complaint, Plaintiffs allege that Defendants breached their contractual obligations to Plaintiffs.  In Count Nine, Plaintiffs seek a declaration that Defendants have violated the terms of the 2005 Loyalty Agreement and the 2003 License Agreement and amendments thereto.  Defendants assert that because the relevant contracts were all entered into between Plaintiffs and Audibel, a division of Starkey Laboratories, Inc., Plaintiffs' Complaint fails to allege sufficient facts to state a claim for breach of contract or declaratory judgment against the non-Audibel Defendants.

In their Complaint, Plaintiffs collectively refer to all named defendants as "Starkey Group," but do not connect their allegations to any specific defendant.  In addition, Plaintiffs generally assert that all Defendants breached the terms of the various agreements between the parties.  (*See, e.g.*, Compl. ¶¶ 80, 131.)  Indeed, the relevant contracts (the 2003 and 2005 Loyalty Agreements, the 2003 License Agreement, and the Asset Purchase Agreement) were all entered into by Plaintiffs and Audibel.  Plaintiffs assert that under the single-enterprise rule, Defendants are jointly responsible for the action of each individual defendant.  In particular, Plaintiffs assert that Defendants have acted in concert, alleging that Defendants share operations and offices, pool advertising, and share directors, shareholders, and officers.  For example, Plaintiffs allege that William Austin is the CEO of Micro-Tech and Starkey Laboratories, Inc., and that Austin is also a shareholder, board member, officer, or agent of the other Defendant entities.

(*See, e.g.*, Compl. ¶¶ 7, 11, 76.)  Plaintiffs also allege that Audibel and Audiosync

Hearing Technologies are directly related through their relationships with Starkey

Laboratories, Inc.

The Court notes that Plaintiffs have not included a "single enterprise" claim in

their Complaint.  Even so, the Court briefly discusses the issue.  Although Plaintiffs

assert that Minnesota law provides for such a theory of liability, Plaintiffs have not

directed the Court to any Minnesota case on point.  Instead, it appears that Plaintiffs are

actually trying to pierce the corporate veil to reach Audibel's "sister" corporations.  (*See,*

*e.g.*, Doc. No. 8 at 11-12.)

In determining whether to pierce the corporate veil, a Minnesota court must:

(1) analyze whether the corporation functioned as an instrumentality of the principals a

party is attempting to reach by piercing the corporate veil; and (2) determine whether

injustice or fundamental unfairness would occur if the corporate veil were left intact.  *See*

*Stoebner v. Lingenfelter,* 115 F.3d 576, 579 (8th Cir. 1997) (citing *Victoria Elevator Co.*

*v. Meriden Grain Co., Inc.*, 283 N.W.2d 509, 512 (Minn. 1979)); *see also Ass'n of Mill &*

*Elevator Mut. Ins. v. Barzen Int'l Inc.*, 553 N.W.2d 446, 449 (Minn. Ct. App. 1996)

(noting that "[g]enerally, absent fraud or bad faith, a corporation will not be held liable

for the acts of its subsidiaries").  A court must consider a number of factors in

determining whether the first prong of the corporate veil test has been satisfied,

including:  (1) insufficient capitalization; (2) failure to observe corporate formalities;

(3) nonpayment of dividends; (4) insolvency of debtor corporation at the time of the

transaction in question; (5) siphoning of funds by dominant shareholder;

(6) nonfunctioning of other officers and directors; (7) absence of corporate records; and

(8) existence of the corporation or corporations as merely a facade for individual

dealings. *Victoria Elevator*, 283 N.W.2d at 512.

Plaintiffs' Complaint is completely devoid of any facts that would establish any of

the relevant factors that would permit the Court to pierce Audibel's corporate veil.

Accordingly, the Court dismisses Plaintiffs' breach of contract and declaratory judgment

claims (Counts One and Nine) insofar as they are asserted against any Defendant other

than Audibel, a division of Starkey Laboratories, Inc., the signatory to the relevant

contracts.

The Court therefore examines Plaintiffs' claims for breach of contract and

declaratory judgment as they are asserted against Audibel, a division of Starkey

Laboratories, Inc.  Plaintiffs allege that Audibel breached its contractual duties and

obligations to Plaintiffs by failing to provide Plaintiffs with the promised "exclusive

territories," by interfering with and misappropriating Plaintiffs' customer base, by failing

to create and monitor a "loyalty fund" in accordance with the terms of the agreements

between the parties, and by requiring Plaintiffs to participate in certain marketing plans.

At the heart of Plaintiffs' claim that Audibel breached its agreements with Plaintiffs is the

interpretation of the provision that provides Plaintiffs with exclusive territorial rights for

"Audibel Products." (Compl. ¶ 1, Ex. B ¶ 1.)  Plaintiffs argue that there is an ambiguity

as to the definition of "Audibel Products."  In particular, Plaintiffs suggest that "Audibel

Products" could include all of Defendants' products.  Defendants, on the other hand,

argue that the plain language of the contract does not allow for such a reading.

Even after rejecting Plaintiffs' single-enterprise theory, the Court still finds that it is not clear, based on the limited information comprising the record at this early stage of the litigation, what the definition of "Audibel Products" includes.  Thus, it is premature to consider a motion to dismiss on Plaintiffs' breach of contract and declaratory judgment claims.  Accordingly, the Court denies Defendants' motion to dismiss insofar as it pertains to Plaintiffs' breach of contract and declaratory judgment claims against Audibel, a division of Starkey Laboratories, Inc.[4]

In sum, Counts One and Nine are dismissed without prejudice insofar as they are asserted against the non-Audibel Defendants.  Counts One and Nine survive insofar as they are asserted against Audibel.

## III.    Minnesota Franchise Act

In Count Two, Plaintiffs allege that their commercial relationship with Defendants constitutes a "franchise" under the Minnesota Franchise Act ("MFA"), Minnesota Statute § 80C.01, *et seq.*  (Compl. ¶ 84.)  Plaintiffs further allege that Defendants engaged in "unfair practices" in violation of Minnesota Statute § 80C.01, *et seq.*  (*Id.* ¶ 86.) Defendants argue that Plaintiffs' MFA claim must be dismissed because Plaintiffs have merely made conclusory allegations and have thus failed to adequately support the claim.

---

[4]     Because "Audibel" is a registered name under which Starkey Laboratories, Inc., does business (Doc. No. 6 at 2 n.1), the Court allows the breach of contract and declaratory judgment claims to go forward as they are asserted against Starkey Laboratories, Inc.  As explained earlier, Defendants do not appear to contest that Starkey Laboratories, Inc., is a properly named defendant.

As a threshold matter, Plaintiffs must allege that they have a franchise relationship with Defendants.  Plaintiffs assert that they have alleged facts sufficient to substantiate the existence of a franchise under both the "business opportunity" provision of the MFA, Minn. Stat. § 80C.01, subd. 4(a)(3), and the standard franchise provision requiring the payment of a franchise fee, Minn. Stat. § 80C.01, subd. 4(a)(1).  In support, Plaintiffs allege that they entered into a contract with Defendants and that Defendants sold Plaintiffs hearing aid products and related services for the purpose of enabling Plaintiffs to start a business; that Audibel granted Plaintiffs a license to use Audibel's trademark and advertising provided by Defendants; that Plaintiffs developed their territories, creating demand for and enhancing the reputation and brand value of Defendants' products; that Plaintiffs paid various indirect and direct fees that constitute franchise fees, such as minimum purchase requirements and training and advertising fees; and that Defendants "led Plaintiffs to believe" that Plaintiffs' income would exceed the amount of Plaintiffs' investments.

The relevant portions of the Minnesota Franchise Act provide the following:

Subd. 4. Franchise. (a) "Franchise" means (1) a contract or agreement, either express or implied, whether oral or written, for a definite or indefinite period, between two or more persons:

(i) by which a franchisee is granted the right to engage in the business of offering or distributing goods or services using the franchisor's trade name, trademark, service mark, logotype, advertising, or other commercial symbol or related characteristics;

(ii) in which the franchisor and franchisee have a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise; and

> > (iii) for which the franchisee pays, directly or indirectly, a franchise fee; or
> > . . .
>
> > (3) the sale or lease of any products, equipment, chattels, supplies, or services to the purchaser, other than the sale of sales demonstration equipment, materials or samples for a total price of $500 or less to any one person, for the purpose of enabling the purchaser to start a business and in which the seller:
> >
> > . . .
> >
> > > (iii) guarantees that the purchaser will derive income from the business which exceeds the price paid to the seller.

Minn. Stat. § 80C.01, subd. 4(a)(1) & (3).

The Court concludes that Plaintiffs' allegations in support of their MFA claim are insufficient to survive Defendants' motion to dismiss.  First, Plaintiffs have failed to allege that Defendants sold them products "for the purpose of enabling [Plaintiffs] to start a business" or that Defendants guaranteed that Plaintiffs would derive income from the business which exceeds the price paid to the Defendants.  Accordingly, Plaintiffs have failed to sufficiently allege that the business-opportunity provision of the MFA applies. In addition, Plaintiffs have failed to sufficiently allege that they are a franchisee under the standard definition of a franchise involving the payment of a "franchise fee."  Plaintiffs claim that they paid a franchise fee via minimum purchase requirements, training fees, and advertising fees.  However, Plaintiffs have not made any allegations to support the conclusion that any of these fees constitute a franchise fee.  *See, e.g.*, *Day Distrib. Co. v. Nantucket All Serve, Inc.*, 07-cv-1132, 2008 WL 2945442, at *5 (D. Minn. July 25, 2008) ("Minnesota courts (and federal courts applying Minnesota law) have long held that ordinary business expenses . . . are not considered franchise fees unless they are

unreasonable and lack a valid business purpose."). Even if Plaintiffs could establish that there were a franchise relationship, Plaintiffs have still failed to sufficiently allege a violation of the Minnesota Franchise Act. Accordingly, Count Two is dismissed without prejudice.

## IV.   Equitable Remedies (Unjust Enrichment, Estoppel & Constructive Trust)

In Counts Three, Five, and Ten, respectively, Plaintiffs assert claims of unjust enrichment, estoppel and constructive trust. Defendants contend that these claims must be dismissed against Audibel because Plaintiffs have alleged that their relationship with Audibel is governed by a valid and enforceable contract. Plaintiffs agree that they have raised contractual claims in their Complaint and that these three claims sound in equity. Plaintiffs, however, also assert that the existence of a contract (and contract-related claims) does not bar the simultaneous pleading of equitable claims.

Here, a valid contract indisputably governs Plaintiffs' relationship with Audibel. Accordingly, Plaintiffs are not entitled to plead equitable claims in the alternative. *See, e.g, European Roasterie, Inc. v. Dale*, Civ. No. 10-53, 2010 WL 1782239, at *5 (D. Minn. May 4, 2010). Thus, Plaintiffs' equitable claims are properly dismissed. In addition, the equitable claims, as they are asserted by the non-Audibel Defendants, similarly fail as Plaintiffs have not alleged sufficient facts to demonstrate that any non-Audibel Defendant engaged in negotiations or had any business dealings with Plaintiffs. Moreover, Plaintiffs have failed to allege any facts that would show that any conduct on the part of a non-Audibel Defendant could support a cause of action for unjust enrichment, promissory estoppel, or constructive trust.

Accordingly, Counts Three, Five, and Ten are dismissed without prejudice as they are asserted against all Defendants.

## V.   Tortious Interference

In Count Four, Plaintiffs assert a cause of action for tortious interference with existing and prospective contractual relationships against all Defendants.  A claim for tortious interference with contract requires the existence of a contract, the alleged wrongdoer's knowledge of the contract, and an intentional procurement of its breach, without justification, that results in damage to the plaintiff.  *Maness v. Star–Kist Foods, Inc.*, 7 F.3d 704, 709 (8th Cir. 1993) (citing *Furlev Sales and Assocs., Inc. v. North Am. Auto. Warehouse, Inc.*, 325 N.W .2d 20, 25 (Minn. 1982)).  A claim for tortious interference with prospective contractual relations requires that a defendant intentionally and improperly interfered with the plaintiff's prospective business relations.  *United Wild Rice, Inc. v. Nelson*, 313 N.W. 2d 628, 632–33 (Minn. 1982).

Defendants argue that Plaintiffs fail to assert the existence of a contract or prospective contract with a third party.  Plaintiffs respond (assuming arguendo that Defendants are not a single enterprise) that they have stated a claim for tortious interference with existing and prospective contractual relations against the non-Audibel Defendants.  In particular, Plaintiffs allege that the non-Audibel Defendants intended to and did interfere with Plaintiffs' sale of Audibel's products to customers and prospective customers.  In their opposition, Plaintiffs explain that they assert both a claim for tortious interference with existing Audibel contracts and tortious interference with prospective contractual relations.  In support of the former, Plaintiffs assert that the non-

Audibel Defendants acted intentionally to procure the breach of the Audibel "minimum purchase requirement" by selling identical goods into Plaintiffs' exclusive Territory.  In support of the latter, Plaintiffs assert that the non-Audibel Defendants intentionally created marketing materials that mimicked Audibel's marketing materials in an attempt to "ride on" Plaintiffs' goodwill and reputation, which prevented Plaintiffs from procuring business contracts with prospective customers.

Taking Plaintiffs' factual allegations to be true, the Court concludes that Plaintiffs have sufficiently pled a cause of action for tortious interference with both existing and prospective contractual relationships insofar as these claims are asserted against the non-Audibel Defendants.  In light of the Court's previous finding that the defendants were not acting as a single enterprise, Plaintiffs have sufficiently alleged that the non-Audibel Defendants knew of Plaintiffs' contracts with Audibel and intentionally engaged in conduct that resulted in the alleged breach of the contracts.  Specifically, Plaintiffs have alleged that the non-Audibel Defendants knew of the minimum purchase requirement and that the non-Audibel Defendants acted intentionally to procure a breach by selling identical goods into Plaintiffs' exclusive Territory.  In addition, Plaintiffs have sufficiently alleged that the non-Audibel Defendants improperly interfered with Plaintiffs' prospective business relations by intentionally creating marketing materials that mimicked the Audibel marketing materials.  In so holding, the Court acknowledges

that this is a close call and that these claims will likely be challenged again at the

summary judgment stage.[5]

## VI.   Fraud and Misrepresentation

In Count Eight, Plaintiffs allege causes of action for fraud and misrepresentation.

Under the common law of Minnesota, the elements of fraud are:  (1) a false

representation of a past or present material fact which was susceptible of knowledge;

(2) the defendant knew the representation was false or made it without knowing whether

it was true or false; (3) an intention to induce the plaintiff to act in reliance on the

misrepresentation; (4) the representation caused the plaintiff to act in reliance thereon;

and (5) the plaintiff suffered pecuniary damage as a result of the reliance.  *Hoyt Props.,*

*Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (quoting *Specialized*

*Tours, Inc. v. Hagen,* 392 N.W.2d 520, 532 (Minn. 1986)).  "Under Minnesota law, any

allegation of misrepresentation, whether labeled as a claim of fraudulent

misrepresentation or negligent misrepresentation, is considered an allegation of fraud

which must be pled with particularity."  *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th

Cir. 2010).  Accordingly, the heightened pleading requirements of Rule 9(b) of the

Federal Rules of Civil Procedure are applicable to claims of both fraud and

misrepresentation.  To satisfy the heightened pleading requirement, a plaintiff must set

forth the "who, what, when, where, and how" of an alleged fraud.  *Parnes v. Gateway*

---

[5]      In particular, Plaintiffs will have to reconcile potentially inconsistent allegations
in their Complaint.

*2000, Inc*., 122 F.3d 539, 549 (8th Cir. 1997).  In other words, a plaintiff must plead the
"time, place and contents of false representations, as well as the identity of the person
making the misrepresentation and what was obtained or given up thereby."  *Id*. (quotation
mitted).

In their Complaint, Plaintiffs allege that Defendants made fraudulent statements to
induce Plaintiffs to enter into various agreements with Defendants.  In particular,
Plaintiffs assert that William Austin made certain promises with respect to loyalty fund
payments as part of the alleged 2005 Verbal Agreement. (Compl. ¶ 26.)  In addition,
Plaintiffs assert that Defendants made false representations with respect to the
profitability of the Twin Cities territory and the exclusivity of optional training and
advertising provisions in the 2003 License Agreement.  Plaintiffs also allege that
Defendants knew these statements were false or made them without regard to their
falsity, that Defendants intended Plaintiffs to act, and that Plaintiffs reasonably relied on
the statements to their detriment.

The Court concludes that Plaintiffs' Complaint fails to state a claim for fraud or
misrepresentation against Defendants.  Put simply, Plaintiffs have failed to allege
sufficient facts that would show that any Defendant made false representations of a past
or present fact for the purpose of inducing Plaintiffs to enter into any of the various
contracts.  Moreover, Plaintiffs' allegations fail to meet the required particularity because
they do not sufficiently allege the "who, what, when, where, and how" of their fraud
claim.  Accordingly, Count Eight is dismissed without prejudice.

**VII.   Breach of Implied Covenant of Good Faith and Fair Dealing**

In Count Six, Plaintiffs assert a claim for breach of implied covenant of good faith and fair dealing.  "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract."  *In re Hennepin Cnty. 1986 Recycling Bond Litig.,* 540 N.W.2d 494, 502 (Minn. 1995) (citations omitted).  The implied covenant of good faith and fair dealing serves only "to enforce existing contractual duties, and not to create new ones."  *Allen v. Thom,* No. A07–2088, 2008 WL 2732218, at *5 (Minn. Ct. App. July 15, 2008).  While Minnesota law recognizes the implied covenant of good faith and fair dealing, it does not recognize a separate cause of action for breach of this covenant where the claimed breach arises from the same conduct as a breach-of-contract claim. *See, e.g., Medtronic, Inc. v. ConvaCare, Inc*., 17 F.3d 252, 256 (8th Cir. 1994) ("Minnesota law does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing separate from the underlying breach of contract claim.") (citations omitted).  It appears from Plaintiffs' Complaint that Plaintiffs base their breach of implied covenant claim on the same conduct as their breach of contract claim. Accordingly, Count Six is dismissed without prejudice.

**VIII.  Lanham Act & Minnesota Deceptive Trade Practices Act**

In Count Eleven, Plaintiffs allege a claim of unfair competition under the Lanham Act.  Plaintiffs allege that Defendants used advertisements that were nearly identical to the advertisements used by Plaintiffs to sell Audibel instruments and that this use was likely to cause confusion.  In Count Seven, Plaintiffs assert a cause of action for the

violation of the Minnesota Deceptive Trade Practices Act, Minnesota Statute § 325D.44,

again asserting that Defendants marketed identical hearing aid goods under different

names in Plaintiffs' exclusive Territory and that the marketing of these goods caused a

likelihood of confusion.

The Lanham Act was designed, in part, "to protect persons engaged in commerce

against false advertising and unfair competition." *United Indus. Corp. v. Clorox Co.*, 140

F.3d 1175, 1179 (8th Cir. 1998).  The Lanham Act states, in relevant part:

> Any person who, on or in connection with any goods or services . . . uses in
> commerce any word, term, name, symbol, or device, or any combination
> thereof, or any false designation of origin, false or misleading description of
> fact, or false or misleading representation of fact, which-
>
>> (A)     is likely to cause confusion, or to cause mistake, or to
>> deceive as to the affiliation, connection, or association of such
>> person with another person, or as to the origin, sponsorship,
>> or approval of his or her goods, services, or commercial
>> activities by another person,
>
> shall be liable in a civil action by any person who believes that he or she is
> or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A).  For its part, the Minnesota Deceptive Trade Practices Act

makes it an actionable deceptive trade practice to "cause[ ] [a] likelihood of confusion or

[] misunderstanding as to the source, sponsorship, approval, or certification of goods or

services" or to "cause[] [a] likelihood of confusion or [] misunderstanding as to

affiliation, connection, or association with, or certification by, another."  Minn. Stat.

§ 325D.44, subd. 1.

To support these claims, Plaintiffs rest primarily on the following allegations:

(1) that certain marketing materials have been produced for or by Defendants for their

various brand products; (2) that some of these materials, which are used in connection with different brands for Audibel, Starkey, Nu-Ear, Audiosync, and Micro-Tech, have trivial modifications; (3) that Defendants marketed identical goods under different names; and (4) that the marketing of these goods caused a likelihood of confusion or misunderstanding as to the affiliation, connection, or association with others.  (*See, e.g.*, Compl. ¶¶ 73-75, 109-118.)  With respect to confusion, Plaintiffs assert that the materials are likely to cause confusion at the distribution level as between Plaintiffs and their customers and at the source level as between Audibel and the non-Audibel Defendants.

In essence, Plaintiffs allege that Defendants have used advertisements in connection with hearing aid products that are false and misleading due to the advertisements' "extreme similarity" with those used by Plaintiffs.  Plaintiffs have also alleged that the use of the similar advertising is likely to cause confusion between Plaintiffs' Audibel products and those promoted by Defendants.  The Court concludes that Plaintiffs' allegations in support of their claims under the Lanham Act and the Minnesota Deceptive Trade Practice Act are sufficient to survive at this early pleading stage.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1.      Defendants' Motion to Dismiss (Doc. No. [2]) is **GRANTED IN PART** and **DENIED IN PART** as follows.

     a.      Counts One and Nine of Plaintiffs' Complaint (Doc. No. [1]) are **DISMISSED WITHOUT PREJUDICE** insofar as they are asserted

against Starkey Holding Corporation, Audibel, Inc., Micro Ear Technology, Inc., and William Austin.

      b.      Counts Two, Three, Five, Six, Eight, and Ten of Plaintiffs' Complaint (Doc. No. [1]) are **DISMISSED WITHOUT PREJUDICE**.

      c.      Count Four of Plaintiffs' Complaint (Doc. No. [1]) is **DISMISSED WITHOUT PREJUDICE** insofar as it is asserted against Starkey Laboratories, Inc., but otherwise survives as it is asserted against Starkey Holding Corporation, Audibel, Inc., Micro Ear Technology, Inc., and William Austin.


Dated:  March 20, 2012        <u>s/Donovan W. Frank</u>
                                  DONOVAN W. FRANK
                                  United States District Judge